Kevin PARKS, et al., Plaintiffs,

v.

PORTNOFF LAW ASSOCIATES, Defendant.

Civil Action No. 02–48.

United States District Court, E.D. Pennsylvania.

Jan. 22, 2003.

Richard N. Lipow, Malvern, PA, for plaintiffs.

William F. McDevitt, James W. Christie, Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for defendants.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

The parties have requested approval of settlement of this class action, brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.,* on behalf of real property owners in the Commonwealth of Pennsylvania who received com-munication from Portnoff Law Associates between January 3, 2001, and January 3, 2002 seeking payment of municipal claims for water, sewer, and trash assessments. The claims in this case concern alleged violations of the notice provisions of the Fair Debt Collection Practices Act ("FDCPA"). After a fairness hearing, the court approves the settlement and issues a final judgment and order under Rule 54(b) of the Federal Rules of Civil Procedure.

### I. Introduction

#### A. Background and Allegations

The claim now before the court is brought on behalf of a class by Kevin Parks, Lenin Gonzalez, and Migdalea Gonzalez, who are real property owners in Valley Township. The named plaintiffs in this action received letters from Portnoff Law Associates, on behalf of Valley Township, seeking payment of delinquent trash, sewer and water service bills. In the letters, the defendants notified the named plaintiffs that, unless they paid the money owed within ten days, a lien would be filed against their individual properties.[1] The letters continued:

> You are hereby advised that Township of Valley will avail itself of all legal remedies until is receives payment in full. Legal recourse will result in substantial additional cost to you and may result in the Sheriff's sale of your property. It is in your best interest to make payment promptly and avoid these expenses. You should be further aware the Township of Valley will not accept installment payment of the amount that is delinquent. *Payment must be made in full.*

Pls.' Mot. For Class Cert., Ex. 1.

The named plaintiffs filed this action on January 4, 2002 and filed an amended

---

1. Under Pennsylvania law, townships and authorities may place a lien on real property for the cost of services such as water, sewer, and trash. *See* 53 P.S. § 7101 *et seq.*

complaint on March 26, 2002. The amended complaint charged that Portnoff's collection letters failed to include notices that the defendant was a debt collector or validation notices as required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201. By Order dated August 2, 2002, this court certified the class pursuant to Fed.R.Civ.P. 23(b)(3) as follows:

> All persons who, as owners of real property in the Township of Valley, Chester County, Pennsylvania and elsewhere in the Commonwealth of Pennsylvania, received communication from Portnoff Law Associates, Inc. between January 3, 2001 and January 3, 2002, relating to municipal claims for water, sewer and trash assessments against their real property as well as fees and costs imposed pursuant to Pennsylvania's Municipal Claim and Tax Liens Act, 53 P.S. § 7101, *et seq.* and local ordinances and who assert claims against Portnoff Law Associates, Inc., pursuant to the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* as set forth in Count I of the Amended Complaint in this action.

On October 8, 2002 the court approved notice to the class and the parties' joint motion for preliminary approval of the settlement. The Preliminary Settlement Agreement provided that Portnoff Law Associates would establish a class settlement fund of $75,000. Under the proposed agreement, this Settlement Fund would cover the cost of payments to class members who filed claims, the cost of notice to the class and administration of the Fund, as well as the cost of attorneys' fees

and the individual settlement awards to the Representative Plaintiffs. On October 29, 2002, Notices of Class Action and Proposed Settlement were mailed to 2,391 potential class members identified by the defendant and were delivered to the member's last known address in defendant's records for all Class Plaintiffs. Fifty-two class members submitted timely responses to the Notice. No class member elected to opt-out or objected to the settlement.

**B. The Terms of the Settlement**

Under the terms of the Settlement Agreement, the defendant shall pay $1,000 to Kevin Parks and $1,000 to Lenin and Migdalia Gonzalez in full settlement of their individual claims, pursuant to 15 U.S.C. § 1692(a)(2)(B)(i). The Settlement Fund shall be allocated first to pay Administrative Expenses, to pay for attorneys' fees and reimbursement of litigation expenses awarded to counsel filing petitions with the Court. The balance of the Settlement Fund, or the Net Settlement Fund, shall be distributed to the fifty-two claiming class members who submitted valid and timely claims.[2] If funds remain after distribution to claiming class members, including funds covered by returned checks and checks not cashed within 120 days from the date of mailing or returned as undeliverable, the plaintiffs will move the court for those funds to be donated to charities, consumer advocacy groups, and/or education organizations such as Legal Aid of Southeastern Pennsylvania, the Montgomery Bar Foundation, and the Chester County Bar Foundation.

**C. The Fairness Hearing**

On January 22, 2003, the court held a fairness hearing on the proposed settle-

---

2. The Settlement guarantees all Class members an equal cash payment of not less than $250.00 each. The remaining funds shall be divided among the 53 class members after payment of administrative costs, attorneys' fees, and the award to the representative plaintiffs.

ment. Counsel for the settling parties outlined the settlement terms, their opinions regarding the proposal, and the negotiations and considerations leading up to the agreement. No objections were raised at the hearing, and no written objections were filed with the court.

## II. Examination of Settlement

■■■ "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors*, 55 F.3d 768, 784 (3d Cir.1995). Under Federal Rule 23(e), "a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." Fed.R.Civ.P. 23(e). When approving a class action settlement, a district court must determine whether the proffered settlement is "fair, reasonable and adequate." *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.2001). According to the Third Circuit, "[r]ule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims." *In re Gen. Motors*, 55 F.3d at 805. This inquiry "require[s] courts to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extin-

guished.'" *Id.* (citing 2 Newberg & Conte § 11.41, at 11–88 to 11–89).

## A. Class Certification

■■■ In evaluating class action settlements, "a district court must first find a class satisfies the requirements of Rule 23, regardless of whether it certifies the class for trial or settlement." *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 308 (3d Cir.1998). By Order dated August 8, 2002, this court granted Plaintiffs' motion for class certification pursuant to the federal claims. The court found that the class satisfied numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rules Civil Procedure 23(a) and 23(b). While initially opposing class certification, the defendant does not challenge certification for the purposes of settlement.

## B. Adequacy of Notice

■■■ Before approving a settlement, a district court must examine whether adequate notice was issued to prospective class members. *See In re Prudential*, 148 F.3d at 326–27. While Rule 23(e) requires all members to be informed of a proposed settlement, Rule 23(c)(2) [3] requires notice to "all potential members of a Rule 23(b)(3) class informing them of the existence of the class action, the requirements for opting out of the class and/or entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class." *Id.* at 326. In this case, the court certified

---

**3.** Rule 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Fed.R.Civ.P. 23(c)(2).

a class pursuant to Rule 23(b)(3) and approved a Class Action Notice on August 8, 2002. Because the parties subsequently reached a settlement in this action, a Class Action Settlement Notice was sent in lieu of the Class Action Notice. The Class Action Settlement notice, preliminarily approved by this court on October 9, 2002, described the proposed settlement's terms and the nature of the claim filed on behalf of the class, as well as instructions regarding a class member's right to object to or opt out of the settlement and the member's opportunity to be heard at the final fairness hearing. These notices were sent via first class mail to the last known address in defendant's records of the 2,391 potential class members. The court finds that the notice was a reasonable effort as well as the most efficient and effective means for reaching individual members of the class. Therefore, the notice met the requirements of Federal Rule of Civil Procedure 23.

### C. Fairness

A settlement of a class action may not be approved unless it is "fair, adequate, and reasonable." *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir.1983). In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d. Cir.1975), the Third Circuit provided a structure for evaluating the fairness of a proposed class action settlement. The nine-factor test adopted by the *Girsh* court requires a district court to evaluate:

(1) the complexity, expense, and likely duration of the litigation ..., (2) the reaction of the class to the settlement ..., (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater settlement ...; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery ..., (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Girsh*, 521 F.2d at 157 (internal citations omitted). In addition, the Third Circuit has noted that in certain circumstances it may be appropriate to consider additional factors, such as

the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323. When weighing these factors, the plaintiff bears the burden of showing that these factors favor settlement approval. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785 (3d Cir.1995).

### 1. Complexity and Duration

"This factor is intended to capture 'the probable costs, in both time and money, of continued litigation.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.1974)). As more

fully discussed below, this case involves a complex legal question as to whether the defendant's letters violated the FDCPA. According to the defendant, the Act does not apply to the enforcement of municipal liens against real property. Resolution of this issue would require extensive briefing and a significant amount of time and money. While both parties had prepared summary judgment motions that addressed this issue as well as others, there is no guarantee that the matter could be decided on summary judgment. By settling this matter, both the plaintiff class and the defendant avoid the expense of further preparation for trial, uncertainty of outcome, and certain appeals from judgment. Because of the difficult legal questions and the costs of continued litigation, the first factor weighs in favor of the proposed settlement.

### 2. Class Reaction

 "This factor attempts to gauge whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318. Although the number of those expressing objections or choosing to opt-out of the class is some measure of the strength of the opposition, courts must be cautious about "inferring support from a small number of objectors to a sophisticated settlement." *In re Gen. Motors*, 55 F.3d at 812. Of the 2,391 notices mailed to Class members informing them of the class action, settlement terms, and final approval hearing, 53 members filed responses. It is indicative of the settlement's fairness that no member opted out and that no members filed objections to the settlement. Because of the favorable reaction from the Class, the second factor weighs in favor of the proposed settlement.

### 3. Stage of the Proceedings and Amount of Discovery Completed

 A settlement should not be approved if the parties do not have an " 'ade-quate appreciation' " of the merits of the case. *In re Prudential*, 148 F.3d at 319 (quoting *In re Gen. Motors*, 55 F.3d at 813). In this case, the parties have engaged in extensive discovery and settlement discussions. Plaintiffs' counsel reviewed hundreds of documents including all records, notices, and claims against the plaintiffs, the defendant's form complaints, as well as the defendant's system of collection. The defendant deposed the named plaintiffs while plaintiffs' counsel deposed Michelle Portnoff of Portnoff Law Associates. The parties also prepared motions for summary judgment but reached a settlement before filing the motions. Plaintiffs were ready to proceed to trial and could appropriately calculate the strengths and weaknesses of the case. The parties prepared a detailed settlement agreement following extensive settlement discussions with Magistrate Judge Jacob P. Hart. The proceedings are at such a stage that the parties have been able to make an informed judgment regarding settlement. Therefore, this factor weighs in favor of the proposed settlement.

### 4. Risks of Establishing Liability

 This factor "survey[s] the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. However, the court should avoid conducting a mini-trial and must "to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance*, 965 F.Supp. at 638. In this case, plaintiffs' class counsel notes that, in addition to the normal uncertainty of a jury's verdict, "[t]here are several contested legal and factual issues including

whether the defendant's collection activities were exempt from the Fair Debt Collection Practices Act." Pls.' Mem. in Support of Final Approval of Settlement at 9. As discussed above, the defendant vigorously denies liability. According to the defendant, the Act does not supersede the *in rem* procedure set forth in the Pennsylvania Municipal Claims and Tax Liens Act, 35 P.S. § 7101, *et seq.*, for the collection of delinquent property and user fees by a municipality through its representative. To support its position, the defendant argues: 1) that the Act does not apply to the enforcement of municipal liens against real property; 2) that Valley Township's delinquent municipal assessments for sewer, water, and trash are not "debts" within the meaning of the Act; and 3) that the Act's scope should not be expanded to include proceedings by a municipality to recover its municipal claims in the absence of abusive practices by a municipality. Because the FDCPA defines "consumer debt" as "arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household services," 15 U.S.C. § 1692(a)(5), the defendant argues that the Act is directed towards personal consumer debt collectors rather than against government agents collecting delinquent municipal assessments owed to local government by lien enforcement. Due to these legal questions, plaintiffs will not easily establish liability and the risks of dismissal are significant. Therefore, this factor weighs in favor of settlement.

### 5. Risks of Establishing Damages

 If this case were to proceed to trial, it is certain that members of the class would receive a much smaller monetary award compared to the settlement award. The settlement now before the court guarantees each member a cash payment of at least $250 with an aggregate minimum of $13,500. Because this settlement provides a sufficient monetary award for the plaintiffs, this factor favors settlement.

### 6. Risks of Maintaining the Class Action through Trial

 "The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *In re Gen. Motors*, 55 F.3d at 817. While defendant has not formally objected to class certification, Portnoff Law Associates initially argued for a narrower definition of the class. Because the defendant could challenge the definition of the class at trial or on appeal, this factor heavily favors of approving the proposed settlement.

### 7. Defendant's Ability to Withstand Greater Judgment

In the plaintiffs' memorandum in support of the motion for final approval of the settlement, plaintiffs' counsel represented that the defendant's net worth is less than $1,000,000. Under 15 U.S.C. § 1692(k)(a)(2)(B)(ii) damages for the class are capped at the lesser of $500,000 or 1 per centum of the net worth of the debt collector. However, at the hearing the net worth was not established. On the record before the court, this *Girsh* factor weighs neither in favor nor against settlement. The court declined an *in camera* presentation of defendant's net worth because of its feeling that this matter should be decided on a public record.

8. Range of Reasonableness and of the Settlement Fund in Light of the Best Possible Recovery

 "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential,* 148 F.3d at 322 (quoting *In re Gen. Motors,* 55 F.3d at 806.) Members of the class, collectively, will receive a minimum of $13,500 under the Settlement. Furthermore, if this matter proceeded to trial the net value of the recovery would be decreased due to the costs of the conducting a trial, filing post-trial motions, and lodging an appeal. The reasonableness of the Settlement Fund in light of the best possible recovery weighs in favor of the proposed settlement.

9. The Range of Reasonableness of the Settlement Fund to a Possibly Recovery in Light of all the Attendant Risks of Litigation

 This factor requires the court to examine the terms of settlement from a "slightly different vantage point[ ]" than reasonableness in light of the best recovery. *In re Gen. Motors,* 55 F.3d at 806. As discussed above, this litigation involves difficult legal questions regarding the applicability of the FDCPA. Even if the plaintiffs successfully defeated defendant's motion for summary judgment and were successful at trial, it is certain that the defendant would appeal the decision. Recovery for the class could takes years. This settlement offers the more reasonable means of addressing the injuries to the plaintiffs in light of these risks. There-

fore, this factor weighs in favor of the proposed settlement.

10. Additional Factors

In considering the relevant factors discussed in *In re Prudential Ins. Co. of America Sales Litig.,* 148 F.3d 283, 323 (3d Cir.1998), the court finds that (1) the pleadings, discovery, and class certification motion have developed the underlying substantive issues such that all parties may assess the merits of liability and damages; (2) members of the class have had a sufficient opportunity to opt out of the settlement; (3) the attorneys' fees are reasonable;[4] and (3) the procedures for processing the individual claims under the settlement are fair and reasonable.[5]

III. Conclusion

For the foregoing reasons, the court finds that the proposed settlement is fair, adequate, and reasonable.

An appropriate Order follows.

### FINAL JUDGMENT AND ORDER

AND NOW, this 22nd day of January, 2003, upon consideration as to whether the proposed settlement of the above referenced matter (the "Litigation") should be finally approved, the parties having presented their Settlement Agreement to the court, and the court having held a hearing on the fairness of the proposed settlement of the Litigation, at which objectors to the settlement could appear, and the court being fully advised in the premises, the court finds that:

1. Notice of the proposed settlement has been timely mailed to individual Class members who could be rea-

---

4. For a fuller discussion on this issue, see this court's Order of even date approving the plaintiffs' counsel's fee petition.

5. The individual awards of $2,000 to representative plaintiffs are fair, given the time and energy invested in bringing this successful action.

sonably identified from defendants' records. Such notice satisfies the requirements of Rule 23(c) of the Federal Rules of Civil Procedure.

2. No Class members timely requested exclusion from the Class.

3. The issues as to liability and remedies, if any, in the Litigation are issues as to which there are grounds for difference of opinion, and the proposed settlement of the Litigation constitutes a resolution of those issues that is fair, reasonable and adequate to the members of the Class certified herein.

It is hereby **ORDERED** that:

1. The Settlement Agreement submitted herein is approved as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the parties are directed to consummate such agreement in accordance with its terms. All terms defined in the Settlement Agreement have the same meanings when used herein;

2. The court acknowledges the stipulation of the Representative Plaintiffs in the Settlement Agreement and agrees that municipal assessments and liens against real property do not fall within the definition of "consumer debt" under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.*, ("FDCPA"), and, therefore, the provisions of the FDCPA do not apply to defendants' activities on behalf of local governments (as alleged in the Amended Complaint); [6]

3. The Representative Plaintiffs are awarded out of the Settlement Fund provided by defendants the following sum in settlement of their individual claims and for their efforts on behalf of the Class: $1,000.00 to Kevin Parks, and $1,000.00 to Lenin and Migdalia Gonzalez;

4. Attorneys for the Representative Plaintiffs and the Class are awarded out of the Settlement Fund provided by the defendants the sum of $56,000.00 for the payment of their fees and reimbursement of expenses.

5. The Litigation is hereby **DISMISSED,** with prejudice and without costs, as to all defendants. All Class members who did not timely request exclusion shall be barred and enjoined from bringing any and all claims, actions, causes of action, demands, rights, damages, costs, expenses, and compensation whatsoever, which now exist or which may hereafter accrue on account of or growing out of any matters which has been asserted or could have been asserted in the above entitled and numbered cause, and any other claims attendant thereto against all defendants and each of their respective principals, partners, officers, directors, shareholders, managers, employees, agents, representatives, successors, assigns, and attorneys (the "Released Parties");

6. Consummation of the settlement shall proceed as described in the Settlement Agreement and the court hereby retains jurisdiction of this matter in order to resolve any disputes which may arise in the implementation of the Settlement Agreement or the implementation of this Final Judgment and Order. The court retains continuing jurisdiction for purposes of supervising the implementation of the

---

**6.** *See* this court's Memorandum and Order of even date discussing this issue. As the court pointed out at the hearing and as defense counsel agreed, this is an issue that has not been authoritatively addressed elsewhere and may be litigated in other cases.

Settlement Agreement and supervising the distribution and allocation of the Settlement Fund. Final judgment shall be entered as provided herein.