Salena **OSLAN,** on behalf of herself and all others similarly situated, Plaintiff,

v.

**LAW OFFICES OF MITCHELL N. KAY,** Defendant.

No. **CIV.A.01–6043.**

United States District Court, E.D. Pennsylvania.

Nov. 18, 2002.

---

David A. Searles, Philadelphia, PA, James A. Francis, Philadelphia, PA, for Plaintiff.

Curtis P. Cheyney, III, Philadelphia, PA, Mitchell N. Kay, New York City, for Defendant.

## CLASS ACTION

KATZ, Senior District Judge.

### *MEMORANDUM & ORDER*

The parties have requested approval of a settlement of this class action, which consists of claims under the Fair Debt Collection Practices Act, the Pennsylvania Fair Credit Extension Uniformity Act, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. According to the Settlement Agreement, each member of the Class who has presented a timely claim will receive an equal share of a $20,000 award deposited in the Settlement Fund. The representative Plaintiff, Salena Oslan, will receive an award of $1,000 from the Settlement Fund. Defendant has agreed to pay up to $55,000 in attorneys' fees, costs, and reimbursable expenses and also fund the administration of the notice and awards. After consideration of the terms of the proposed settlement and the interests of the Class, the court approves the settlement under Rule 54(b) of the Federal Rules of Civil Procedure.

A Final Judgment and Order follows.

I. Introduction

A. Background and Allegations

Ms. Oslan ("Plaintiff"), filed this class action lawsuit against the Law Offices of Mitchell N. Kay ("Kay" or "Defendant") on December 3, 2001, alleging that letters mailed to her and others by the Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"); the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq.;* [1]

---

**1.** The Pennsylvania Fair Credit Extension    Uniformity Act defines "unfair methods of

and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* ("CPL"). The Complaint alleged, *inter alia,* that the Defendant sent the letters knowing that recipients would wrongly believe that a law firm and lawyers were participating in the collection of these debts. Plaintiff also alleged that the letters were objectively false in telling recipients they only had one opportunity to accept the so-called "settlement offer," when in fact Defendant sent subsequent letters with the same offer.

The court held a pretrial conference on February 26, 2002. On March 26, 2002, the court granted Plaintiff's Motion for Class Certification, in accordance with Federal Rule of Civil Procedure 23(b)(2), (b)(3). The plaintiff class ("Class") consists of all persons in the Commonwealth of Pennsylvania to whom, during the two years prior to the filing of this Complaint, Defendant sent two debt collection letters offering initial so-called "one-time settlement offers," in the form of the letters attached to the Complaint, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service.

On May 10, 2002, the case was listed for a jury trial on July 15, 2002. Magistrate Judge Jacob P. Hart held a settlement conference on June 17, 2002. On May 20, 2002, Defendant and Plaintiff filed Motions for Summary Judgment, both of which the court denied on June 20, 2002. After a hearing on July 15, 2002, the court granted Plaintiff's Motion for Preliminary Approval of Settlement Notice to Class.

On November 8, 2002, Plaintiff filed a Motion for Award of Attorneys' Fees and Reimbursement of Expenses, requesting $55,000 plus interest to be paid from the Settlement Fund, and a Motion for Final Approval of Class Action Settlement and Award to Representative Plaintiff.

### B. The Terms of the Settlement

Pursuant to the Settlement Agreement, Defendant would pay the sum of $1,000 in full and complete satisfaction of the individual claims of Plaintiff; the sum of $20,000 in full and complete satisfaction of the damages claims of the Plaintiff and the Class in accordance with 15 U.S.C. § 1692k(a)(2)(B) and 73 P.S. § 201–9.2(a); and up to $55,000 in attorneys' fees and costs and reimbursable expenses of the Plaintiff and Class members. Defendant also agreed to fund the costs of notice and claims administration. Following the July 15, 2002 hearing on the Motion for Preliminary Approval of Settlement Notice to Class, Defendant deposited $76,000 into an interest-bearing account at Hudson United Bank ("Settlement Fund").

### C. The Fairness Hearing

On November 18, 2002, the court held a fairness hearing on the proposed settlement. Counsel for the Class presented the terms of a final judgment giving effect to the Settlement Agreement. Counsel for the Class and Defendant expressed their continued approval of the settlement as a fair resolution of Plaintiff's claims and the interests of the Class.

Counsel for Defendant raised the concern that Class members were continuing to make claims under the settlement after the deadline for responding to the Notice. With consent of both parties, the court declared that it would deem "late" all claims received by Defendant after November 18, 2002, except as provided by the

competition and unfair or deceptive practices with regard to the collection of debts." 73 P.S. § 2270.4. Engaging in one of these defined practices constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

court. As of November 18, 2002, no members of the Class have made any objections to the settlement and 319 Class members have filed claims under the settlement.

## II. Examination of the Settlement

In order to ensure meaningful appellate review, the district court must present its reasoning for approving the settlement. *See Eichenholtz v. Brennan,* 52 F.3d 478, 488–89 (3d Cir.1995); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir.1974), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974) ("It is essential in cases such as this that the district court set forth the reasoning supporting its conclusion in sufficient detail to make meaningful review possible; use of 'mere boilerplate' language will not suffice."). The court should consider how the substantive terms of a settlement compare to the likely result of a trial and whether the process of negotiating the settlement was free of coercion and conducted by experienced counsel. *See Malchman v. Davis,* 706 F.2d 426 (2d Cir.1983) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). In addition to finding the settlement fair, the court must be satisfied that the Class was properly certified under Federal Rule of Civil Procedure 23 and that members of the Class have re-

ceived adequate notice of the action and settlement.

### A. Class Certification

Although the court may certify a "settlement only" class, it may not substitute a finding of fairness with respect to the proposed settlement for Rule 23(a) and (b) inquiries. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 848–49, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (holding that when certifying a class for settlement purposes only, the district court should pay "heightene[d] attention ... to the justifications for binding the class members .... because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing") (citations omitted). *See also In re Prudential Ins. Co. of Amer. Sales Practices Litig.,* 148 F.3d 283, 308 (3d Cir.1998) ("[A] district court must first find a class satisfies the requirements of Rule 23, regardless of whether it certifies the class for trial or settlement").

By Order dated March 26, 2002, the court granted Plaintiff's Motion for Class Certification. The court found that the Class satisfied numerosity, commonality, typicality, and adequacy of representation under Federal Rule Civil Procedure 23(a) and satisfied Rule 23(b)(2), (b)(3).[2] Defen-

---

**2.** The court has carefully considered the requirements of Fed.R.Civ.P. 23 and finds that this matter should be certified as a class action. As noted in its Order dated March 26, 2002, the Class has approximately 3,300 members, making it so numerous that joinder of all members is impracticable. There are questions of law or fact common to the Class, including Defendant's use of the debt collection letters, whether offering "one-time only" settlements was objectively false, and whether Defendant's attempt to collect debts violated the FDCPA or CPL. Plaintiff's claims are typical of the claims of the Class, as she was

the recipient of two letters that form the basis of the Complaint. *See* Fed.R.Civ.P. 23(a).

The Third Circuit has stated that, with respect to "settlement-only" classes, the key to the Supreme Court's decision in *Amchem Products, Inc. v. Windsor* is a "careful inquiry into the adequacy of representation." *In re Prudential Ins. Co. Amer. Sales Practice Litig.,* 148 F.3d 283, 308 (3d Cir.1998). According to the Third Circuit, adequate representation under Federal Rule of Civil Procedure 23(a) requires a court finding that counsel is qualified and that there are no potential conflicts

dants do not challenge certification for the purposes of settlement.

### B. Notice to Members of the Class

Because the Class was certified under Federal Rule of Civil Procedure 23(b)(3), Plaintiff must also satisfy Rule 23(c)(2), which requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." By Order dated April 18, 2002, the court granted Plaintiff's Motion to Approve Form of Notice to Class Members. On May 31, 2002, the court granted the Joint Motion For Stay of Deadline for Notice to Class because the parties reported that they were near settlement and therefore could conserve resources and reduce confusion by sending members of the Class a single letter notifying them of the action and the proposed settlement.

■ Federal Rule of Civil Procedure 23(e) states that "notice of the proposed ... compromise shall be given to all members of the class in such manner as the court directs." Plaintiff provided notice of the proposed settlement and the Final Ap-

proval Hearing to Class members via first class mail, based on each member's last known address in Defendant's records, within thirty days of the July 15, 2002 hearing. The notice provided the date and location of the Final Approval Hearing and included instructions on how to opt-out of the Class and object to the settlement and proposed payment. The court finds that the notice provided was a reasonable effort and the best notice practicable under the circumstances for reaching individual members of the Class.

### C. Fairness

■ "A class action shall not be ... compromised without the approval of the court...." *See* Fed.R.Civ.P. 23(e). Before giving its final approval, the court must consider whether the terms of the settlement are fair, adequate, and reasonable for the Class. *See Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir.1983). The nine-factor test adopted by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975), provides a structure for evaluating the fairness of the proposed settlement. *See In re General Motors Corp. Pick–Up*

---

between the named plaintiff and the class. *See In re Prudential* at 312. The court finds that Plaintiff's attorneys are qualified, experienced in class action litigation, and have pursued this action vigorously. Counsel has achieved a good result for the Class—a monetary award to each member making a timely claim. The named plaintiff has shown an interest in pursuing this suit to a fair resolution. No conflicts between Plaintiff's interests and those of the Class have been identified and the court finds none upon its own examination.

The parties have represented that questions of law or fact common to the class predominate over any questions affecting individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3). The requirement that common questions predominate is usually sat-

isfied where a plaintiff has alleged a common course of conduct on the part of a defendant. *See In re Prudential*, 148 F.3d at 314–15. All of the claims by Class members concern debt collection letters sent by Defendant that allegedly violated the FDCPA and CPL. A class action is superior to other methods of conducting this litigation because managing separate claims would risk establishing incompatible standards of conduct for Defendant. The class action also allows access to the courts for the multiple plaintiffs who might not sue Defendant individually, particularly because the amount of statutory damages is so low. *See* 15 U.S.C. 1692k(a)(2)(B)(ii) (limiting class action damages to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector," which would equal $290.00 based on Defendant's reported net worth).

*Truck Fuel Tank,* 55 F.3d 768, 785 (3d Cir.1995) (confirming the continued usefulness of the *Girsh* test for approval of class action settlements). The proponent of the settlement, here the Plaintiff, bears the burden of "proving that these factors weigh in favor of approval." *In re General Motors,* 55 F.3d at 785. The *Girsh* factors are:

(1) the complexity, expense, and likely duration of the litigation ..., (2) the reaction of the class to the settlement ..., (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater settlement ...; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ..., (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Girsh,* 521 F.2d at 157 (internal citations omitted).

In revisiting the *Girsh* test, the Third Circuit has found that it may be useful to consider additional factors, among others, when evaluating the fairness of a proposed class action settlement:

The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by settlement for individual classes or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorney's fees are reasonable; and whether the procedures for processing individual claims under the settlement is fair and reasonable.

*In re Prudential. Ins. Co. America Sales Litig.,* 148 F.3d 283, 323 (3d Cir.1998)

1. Complexity, Expense, and Duration of Litigation

■ "This factor is intended to capture the 'probable costs, in both time and money, of continued litigation.'" *In re Gen. Motors,* 55 F.3d at 812 (quoting *Bryan,* 494 F.2d at 801). By settling this matter, both the Class and Defendant avoid the expense of further preparation for trial, uncertainty of the trial outcome, and likely appeals from the judgment. Should the matter proceed to trial, parties would have to submit additional briefs and trial papers. The jury would have to decide questions of liability under both the state and federal statutes, as Defendant maintains that it is not liable. The court previously denied cross-Motions for summary judgment that raised several legal issues, including whether the claims under the FDCPA are barred by the statute of limitations. The parties dispute whether the letters sent by Defendant used any false, deceptive, or misleading representation or means in connection with the collection of a debt and whether Defendant engaged in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. Because of these questions, it is likely that this class action litigation will be sufficiently complex that the trial will be relatively expensive and lengthy. Therefore, the first factor weighs in favor of the proposed settlement.

### 2. Class Reaction

Of the 3,413 notices mailed to Class members informing them of the class action, settlement terms, and final approval hearing, 319 individual members filed a timely complaint to join in the settlement. Only one member, Jacqueline C. Smith, filed a request for exclusion from the Class. The rest of the Class will be bound by the court's Final Judgment and Order. It is indicative of the settlement's fairness that only one member opted out and that no member of the Class filed an objection to the settlement or presented such objection at the Final Approval Hearing. Because of the favorable reaction from the Class, the second factor weighs in favor of the proposed settlement.

### 3. Stage of the Proceedings and Amount of Discovery Completed

Before the court may accept a proposed settlement as a fair, adequate, and reasonable resolution, it must find that Class counsel has made an informed decision that the settlement is in the best interests of the Class. The parties in this case have engaged in discovery, including at least four depositions taken by the Plaintiff. Plaintiff has filed, *inter alia,* a Motion for Class Certification setting forth characteristics of the Class and the common claims and a Motion for Summary Judgment, which presented the legal and factual support for each of the claims. Defendant responded to the various motions and filed a Motion for Summary Judgment, which outlined its defenses to liability and positions on the important issues in this case. The parties have engaged in extended settlement discussions with Magistrate Judge Jacob P. Hart and prepared a detailed Settlement Agreement. The court is satisfied that both sides have been able to make an informed judgment about settlement based on the likelihood of success on the merits. This factor weighs in favor of the proposed settlement.

### 4. Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had the class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors,* 55 F.3d at 814. Should this matter proceed to trial, counsel for the Class would face challenges in proving liability under the FDCPA and CPL. To assess the risks of establishing liability, the court should not conduct a "mini-trial" and it may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington,* 965 F.Supp. 630, 638 (E.D.Pa.1997). Plaintiff has admitted *that a jury might not find Defendant liabile* under the CPL or FDCPA. *See* Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Award to Representative Plaintiff at p. 10. As noted above, the Summary Judgment Motions establish that there are several contested legal and factual issues. The Class faces at least some risk of establishing liability under either of its claims, therefore this fourth factor weighs in favor of the proposed settlement.

### 5. Risks of Establishing Damages

Under the various statutes, there is a significant possibility that the members of the Class would receive a much smaller monetary award compared to the settlement should they proceed to trial and prevail. For the purposes of the FDCPA, Defendant has warranted that its net worth is approximately $29,000, which would limit statutory damages to $290 to

be divided among the Class. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii). It might prove difficult for Plaintiff to show actual damages that resulted from her receipt of Defendant's two letters. In contrast to these uncertain awards, the settlement guarantees all Class members an equal cash payment, approximately $62.00 given that 319 members will be dividing the $20,000 fund amount. Under the CPL, Plaintiff could recover actual damages only if she could establish injury from the receipt of Defendant's letters. There is only a possibility that Plaintiff could recover statutory damages under this statute. *See* 73 P.S. § 201–9.2(a) (plaintiff may bring a "private action to recover actual damages or one hundred dollars ($100), whichever is greater"); *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 473–74 (E.D.Pa.2000) ("[I]t is unclear whether a violation of the Debt Collection Trade Practices Regulations, incorporated into the CPL, allows statutory damages in cases in which no actual damages are proven.").

The settlement meets the primary goal of this suit, monetary redress for allegedly unlawful debt collection practices, while eliminating the risk of not being able to establish damages. This factor weighs in favor of the proposed settlement.

6. Risks of Maintaining the Class Action through Trial

By Order dated March 26, 2002, the court granted Plaintiff's Motion for Class Certification. Defendant has not formally objected to class certification, however in its Motion for Summary Judgment, Defendant contends that the CPL claim would require an individualized showing of how each member of the Class relied on a prohibited action performed by Defendant, and that these individual factual questions predominate over common questions. *See* Motion of Defendant Law Offices of Mitch-

ell N. Kay for Summary Judgment at p. 23. Defendant could raise this argument or other merits of certification under Rule 23(b)(3) at trial or on appeal. This factor weighs in favor of the proposed settlement, as settlement eliminates any risk of maintaining the Class in the future.

7. Defendants' Ability to Withstand a Greater Judgment

The court must consider whether the Class could secure a judgment after a trial that would exceed the settlement and, if so, whether the Class would likely succeed in collecting that larger amount. If the Plaintiff recovered under the CPL, the statute provides for a minimum of $100.00 per member in damages, or a maximum award of $341,300 if every Class member filed a claim. *See* 73 P.S. § 201–9.2(a). It is uncertain whether, if successful on this claim and her federal claim, Plaintiff would also be successful in collecting a greater amount for the Class. Defendant has no insurance policy that would cover these claims. Defendant has represented that its net worth is approximately $29,000. The ability of the Defendant to withstand a greater judgment if the Class was successful at trial is uncertain; therefore this factor weighs in favor of the proposed settlement.

8. Range of Reasonableness and of the Settlement Fund in Light of the Best Possible Recovery

Members of the Class, collectively, will receive $20,000 under the Settlement Agreement, which far exceeds the statutory award under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B)(ii), would be limited to $290.00. Both sides in this matter have recognized weaknesses in their arguments and wish to avoid the expense of a lengthy trial. The court recognizes that a trial,

post-trial motions, and an appeal would reduce the net value of any recovery. Several cases in this district have confirmed that a court is allowed to give weight to the opinions of experienced attorneys in deciding fairness of the settlement as opposed to the likely recovery. *See, e.g., Fisher Bros. v. Cambridge–Lee Indus., Inc.,* 630 F.Supp. 482, 488–89 (E.D.Pa. 1985). The court therefore takes into consideration that experienced counsel for both sides agree that the settlement amount is fair, in terms of what Plaintiff and the Class could expect to receive. The reasonableness of the Settlement Fund in light of the best possible recovery weighs in favor of the proposed settlement.

9. The range of Reasonableness of the Settlement Fund to a Possibly Recovery in Light of all the Attendant Risks of Litigation

This factor requires the court to examine the terms of settlement from a "slightly different vantage point[ ]" than reasonableness in light of the best recovery. *In re Gen. Motors,* 55 F.3d at 806. As discussed above, this litigation would incur risks of establishing liability, proving actual damages even if there was liability, maintaining the class action, and securing recovery of a greater judgment. Because this litigation raises some issues of first impression, it could take years to conclude and secure a recovery if the Class was successful at trial. This factor weighs in favor of the proposed settlement.

10. Additional Factors

In considering the relevant factors discussed in *In re Prudential Ins. Co. America Sales Litig.,* 148 F.3d 283, 323 (3d Cir.1998), the court finds that (1) discovery and the various Motions and pleadings have developed the underlying substantive issues such that all parties may assess the merits of liability and damages; (2) members of the Class have had a sufficient opportunity to opt out of the settlement; (3) the procedures for processing claims under the settlement are fair and reasonable; and (4) the request for attorneys' fees is reasonable.

■ Plaintiff's counsel has calculated attorneys' fees on a lodestar basis, which resulted in total fees and costs of $58,288.90. Pursuant to the cap on attorneys' fees and costs in the Settlement Agreement, the request has been reduced to the maximum amount of $55,000. The provision for attorneys' fees is consistent with fee-shifting principles in the statutes at issue in this case. *See* 15 U.S.C. § 1692k(a)(3); 73 P.S. § 201–9.2(a). The $55,000 requested by Class counsel is within the amount authorized under the Settlement Agreement. The court has carefully considered the fee petition submitted by Plaintiff's counsel and finds that the records reflect a reasonable amount of hours spent in litigating this class action. *See In re Gen. Motors,* 55 F.3d 768, 819 ("At the outset, we note that a thorough judicial review of fee applications is required in all class action settlements."). Although the award of attorneys' fees exceeds the award to the Class, there is no rule of strict proportionality that counsels the court to decrease attorneys' fees in order to match successful judgments or settlement awards. *See Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1042 (3d Cir.1996) (finding that award is relevant "not because of some ratio that the court ought to maintain between damages and counsel fees," but only as a measure of plaintiffs' success as that affects attorneys' fees). As discussed above, the settlement provides a generous award to Class members, considering the weakness of proving liability and actual damages and the limits on statutory dam-

ages. The court has found no evidence of any conflicts between financial incentives of counsel and the interests of the Class. *See Collier v. Montgomery County Housing Auth.*, 192 F.R.D. 176 (E.D.Pa.2000) (settlement must be "the result of good faith, arms length negotiations.").

The individual award of $1,000 to Ms. Oslan is fair, given her time and energy invested in bringing this successful action. Additionally, as plaintiffs point out, the award is justified as a small incentive for bringing these types of claims on behalf of a class.

### III. Conclusion

All of the factors discussed above weigh in favor of settlement of·this class action.

A Final Judgment and Order follows.

### *FINAL JUDGMENT & ORDER*

**AND NOW**, this 18th day of November, 2002, upon consideration as to whether the proposed settlement of the above-referenced litigation should be finally approved, the parties having presented their Settlement Agreement and after a hearing at which members of the Class had the opportunity to object, the court makes the following findings:

A. Notice of the proposed settlement has been timely mailed to all persons in the Commonwealth of Pennsylvania to whom, during the two years prior to the filing of the Complaint, Defendant sent two debt collection letters offering initial so-called "one-time settlement offers" in the form of the letters attached to the Complaint in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service. Such notice satisfies the requirements of Federal Rule of Civil Procedure 23(c).

B. The total number of Class members who timely requested exclusion from the class and who did not later revoke such exclusion is one (1). This member, who is listed on Schedule "A," *infra*, is not bound by this Final Judgment and Order.

C. The issues as to liability and remedies, if any, in the class action are issues as to which there are substantial grounds for differences of opinion and the proposed settlement constitutes a resolution of those issues that is fair, reasonable, and adequate to the members of the Class.

Therefore, it is **ORDERED** that:

1. The Settlement Agreement submitted herein is **APPROVED** as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23 and the parties are directed to consummate the agreement in accordance with its terms. All terms defined in the Settlement Agreement have the same meanings when used herein.

2. The class action litigation against the Law Offices of Mitchell N. Kay is hereby **DISMISSED** with prejudice and without costs and all Class members who did not timely request exclusion are barred from bringing any claims, actions, and causes of actions that were asserted in the class action arising from Defendant's sending of two "one-time settlement offer" letters, or that relate to or arise from the initiation, litigation, or settlement of the class action, or the administration of the settlement, against (i) Representative Plaintiff; (ii) Law Offices of Mitchell N. Kay; (iii) Kay's respective parents, partners, subsidiaries, and affiliates; (iv) the partners, directors, officers, employees, agents, successors, and assigns, both past and present, of Kay; (v) any attorney for Kay, the Representative Plaintiff, her

agents, employees, successors, and assigns (collectively, the "Released Parties").

3. Defendant and the Released Parties are hereby barred from bringing any claim, action, or cause of action against the Representative Plaintiff or any of her attorneys, administrators, successors, or assigns that have been released under the Settlement Agreement. However, this Final Judgment and Order in no way alters, waives, voids, abrogates, releases, or discharges the contractual obligations of Representative Plaintiff or Class members regarding the full, complete, and timely performance of any and all terms of any agreement or contract, oral or written, between Defendant and Representative Plaintiff or Class members. Requests to participate in the settlement received after November 18, 2002 shall be deemed late, except as provided by the court.

4. Upon the Effective Date, or earlier, as may be permitted by the Settlement Agreement, Class Counsel shall allocate and pay from the Settlement Fund the sum of $55,000.00 as Plaintiff's counsel's fair and reasonable fees and reimbursement of expenses in accordance with the terms of the Settlement Agreement. The interest on this award is limited to the amount prepaid into the interest-bearing account and the interest thereon.

5. The Representative Plaintiff is awarded the sum of $1,000.00 in full settlement of her individual claim, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i). Upon the Effective Date, Class Counsel shall pay such award to the Representative Plaintiff from the Settlement Fund. The interest on this monetary award is limited to the amount prepaid into that interest-bearing account and the interest thereon.

6. Upon receipt by Defendant of Claim Forms from those Class members making claims, Defendant shall provide Class Counsel with copies of each returned Claim Form and a report identifying each claim by Member name, address, and telephone number, if provided.

7. The members of the Class making a timely claim are awarded equal shares of the $20,000 amount deposited in the Settlement Fund. Upon the Effective Date, Class Counsel shall pay such awards to Class members who have made a timely claim from the Settlement Fund. The interest on this monetary award is limited to the amount prepaid into that interest-bearing account and the interest thereon.

8. To the extent that checks to those members making claims are returned or remain uncashed for a period of 90 days after mailing, or there otherwise remains a portion of the Settlement Fund not distributed, said sums shall be used for a *cy pres* distribution to a recipient agreed to by the parties, subject to the advance approval of the court.

9. Consummation of the Settlement shall proceed as described in the Settlement Agreement and the court hereby retains jurisdiction of this matter in order to resolve any disputes which may arise in the implementation of the Settlement Agreement of the implementation of this Final Judgment and Order. The court also retains jurisdiction for the purposes of supervising the implementation of the Settlement Agreement and the distribution and allocation of the Settlement Fund and the Net Settlement Fund.

## SCHEDULE A

Members of the Class that have Notified Defendant of their Desire to Opt–Out of *Salena Oslan v. Law Offices of Mitchell N. Kay,* 01–CV–6043

Jacqueline C. Smith of 4819 Beaumont

Avenue, Philadelphia, PA 19143.[1]

---

1.  *See* Affidavit of Christine M. Milanov in con-    of Mailings ¶ 9.
nection with the Administration of the Notices